IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2006 MAR -7 P 4: 21

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT,
MIDDLE DISTRICT ALA.

DARRYL JOYCE,                    )
AIS # 183316,                    )
                                 )
          Petitioner,            )
                                 )         CIVIL ACTION NO.
vs.                              )         2:05-CV-1009-ID
                                 )
WARDEN JONES, *et al*            )
                                 )
          Respondents.           )

## ANSWER

Come now the Respondents, by and through the State of Alabama and, pursuant to this Court's order issued on January 25, 2006, make the following answer to the allegations contained in Joyce's §2254 petition:

1. In his federal habeas corpus petition filed in this Court on October 21, 2005, Joyce attacks his July 22, 2003 conviction in the Montgomery County Circuit Court of murder, on grounds that the trial court erred when it allowed testimony into evidence regarding a photograph of him contained in a "mug book." (Joyce's federal habeas petition, page 4)

2. Respondents admit that Joyce was convicted of murder in the Montgomery County Circuit Court and sentenced to life without parole in the state

penitentiary pursuant to his conviction. Respondents aver, however, that Joyce's conviction and sentence are valid and constitutional under the laws and treaties of the United States and the State of Alabama.

3. Respondents deny each and every material allegation of the petition and demand strict proof thereof.

## PROCEDURAL HISTORY

4. On November 8, 2002, the Montgomery County Grand Jury indicted Darryl Joyce on charges of the intentional murder of James Friendly in case number CC-2002-1417 in violation of Alabama Code §13A-6-2 (1994). (Exhibit A, C. 1, 8) The case came to trial on July 21, 2003. (Exhibit A, R. 4) On July 22, 2003, the jury returned a verdict finding Joyce guilty of intentional murder, as charged in the indictment. (Exhibit A, C. 2, 16) On August 18, 2003, the trial court sentenced Joyce to life without parole under the Alabama Habitual Felony Offender Act. (Exhibit A, C. 3, 21-39)

5. On appeal, Joyce argued that: (1) The trial court erred when it allowed testimony regarding a "mug book," because such testimony was prejudicial and used solely for the purpose of attacking his character and reputation; and, (2) the State failed to prove a prima facie case of murder. (Exhibit D) On August 13, 2004, the Alabama Court of Criminal Appeals affirmed Joyce's conviction of

2

murder in a memorandum opinion. (Exhibit D) Joyce's application for rehearing

was overruled on October 22, 2004. (Exhibit E) Joyce did not seek review in the

Alabama Supreme Court. Certificate of final judgment was issued on December 2,

2004. (Exhibit F) Joyce filed the instant petition on October 21, 2005, and this

action follows.

## TRIAL EVIDENCE

6. On the evening of February 1, 2002, the victim, James "Boo" Friendly,

Eric "Rabbit" Stewart, and the defendant, Darryl "Poncho" Joyce were among a

number of people who attended a party at Nicole Judkins's apartment in the Smiley

Court area of Montgomery, Alabama. (Ex. A, R. 78-88, 305) Boo Friendly and

Rabbit Stewart went between two of the apartment buildings and snorted some

cocaine. (Ex. A, R. 87-90) After they snorted the cocaine, they were approached

by Darryl Joyce, who made some disparaging remarks about people from Gibbs

Village, the area of town James Friendly was from. (Ex. A, R. 95-96)

7. Eric Stewart calmed the two men down and got them to shake hands.

(Ex. A, R. 98) When Stewart went inside to get a beer, however, Joyce and

Friendly started arguing again. (Ex. A, R. 99) Stewart came back and he and

Friendly walked a few steps away to snort some more cocaine. (Ex. A, R. 102)

Joyce followed them and continued to argue with Friendly about who was the

3

"baddest" gang banger. (Ex. A, R. 102-104, 207) Joyce pulled a gun out of the back of his pants and shot Friendly in the leg. (Ex. A, R. 108) Friendly backed away and Joyce shot him again. (Ex. A, R. 108) Friendly fell on the ground and said, "Hold up, man," but Joyce shot him again. (Ex. A, R. 109) After Joyce shot Friendly three times, he ran away. (Ex. A, R. 109, 295, and 298) James Friendly died a short while later. The cause of death was later determined to be multiple gunshot wounds. (Ex. A, R. 293, 305) After the police arrived at the scene, Eric Stewart was taken to headquarters, where he gave a statement that he saw Darryl Joyce shoot James Friendly. (Ex. A, R. 157)

8. Johnny and Brian Osborne attended the party that night in a rented red and black Jeep Cherokee automobile. (Ex. A, R. 161, 199) When they arrived, they noticed their cousin, Eric Stewart, huddled between two buildings with Darryl Joyce and James Friendly. Johnny Osborne recognized James Friendly, because he had grown up with him. (Ex. A, R. 170, 171) Joyce and Friendly were arguing loudly. (Ex. A, R. 163, 206) Brian Osborne left the party but returned a short while later. When Brian came back, Friendly and Joyce were still arguing. Johnny Osborne told his brother that he wanted to leave because the fight was going to escalate. (Ex. A, R. 167-168) Johnny got in the driver's seat. As Brian Osborne walked around the Jeep to get in the passenger side shots were fired that shattered the windows in the truck. (Ex. A, R. 169) Brian Osborne saw Darryl Joyce shoot

4

James Friendly in the leg. (Ex. A, R. 208) Joyce then fired some shots toward their truck. (Ex. A, R. 208) Darryl Joyce shot James Friendly several more times while Brian Osborne was watching. (Ex. A, R. 211) After the shots were fired, Johnny Osborne jumped out of the truck and saw James Friendly lying on the ground. (Ex. A, R. 171) After he shot James Friendly, Darryl Joyce ran away. (Ex. A, R. 220)

9. Detective E. E. Howton of the Montgomery Police Department investigated the murder of James Friendly. (Ex. A, R. 231-235) Howton discovered that there were two Darryls at the party that night, Darryl Joyce and a man named Darryl Foggy. (Ex. A, R. 237) Foggy had a gun that night but it was not the murder weapon and he was later cleared as a suspect. (Ex. A, R. 114-116, 242, and 284) Three witnesses at the party that night identified Darryl Joyce as the shooter. (Ex. A, R. 242) On February 11, 2002, Darryl Joyce was arrested in California and brought back to Alabama for trial. (Ex. A, R. 243)

10. Shell casings that were recovered at the murder scene that night were sent to the Alabama Department of Forensic Sciences for testing. (Ex. A, R. 284) All three shell casings were fired from the same gun. None of them, however, were fired from the weapon that belonged to Darryl Foggy. (Ex. A, R. 284, 289)

## EXHAUSTION

11. In O'Sullivan v. Boerckel, 526 U. S.  838 (1999), the United States

Supreme Court held that, to satisfy the exhaustion requirement, a state prisoner

must present his claims to a state supreme court in a petition for discretionary

review when that review is part of the state's ordinary appellate review procedure.

Joyce's federal petition contains one of the claims that he raised in the Alabama

Court of Criminal Appeals on direct appeal, namely:  The trial court erred in

allowing the admission of a photograph of him that was contained in a "mug

book."  Joyce did not seek certiorari review of this claim in the Alabama Supreme

Court.  Under the criteria of O'Sullivan, therefore, Joyce has not exhausted his

claim.

## STATUTE OF LIMITATION

12. Joyce's petition was filed within the one-year statute of limitation.  Title

28 U. S. C. §2244 (d) (1), enacted by Title I of the Antiterrorism and Effective

Death Penalty Act of 1996, pub. L. No. 104-132, 110 Stat. 1214, provides for a

one-year statute of limitation applicable to a writ of habeas corpus by a person in

custody pursuant to the judgment of a state court.  This law became effective on

April 24, 1996.  The section specifically provides the following:

(d) (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of - -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. (Emphasis added.)

13. For the purpose of the federal statute of limitation, the statute of limitation began to run when Joyce's direct appeal became final on March 2, 2005, ninety days after issuance of the certificate of final judgment by the Alabama Court of Criminal Appeals on December 2, 2004. Joyce filed his federal petition seven months later on October 21, 2005. Joyce's petition was filed within the one-year statute of limitation.

## MEMORANDUM BRIEF

14. In his federal petition, Joyce attacks his conviction of murder on grounds that the trial court erred when it allowed testimony into evidence regarding a photograph of him contained in a "mug book." (Joyce's federal habeas petition, page 4) Joyce raised a similar claim on direct appeal in the Alabama Court of Criminal Appeals. (Exhibit D) The Alabama Court of Criminal Appeals ultimately held that the admission of Detective Howton's testimony regarding the "mug book" was harmless error, because the jury had already heard that Joyce had been in prison. The appellate court pointed out that Brian Osborne had testified earlier that he had been introduced to Joyce as "his home boy out of prison, from prison," and that defense counsel did not object to that testimony and, therefore, any implication of a prior criminal history arising from the reference to the "mug book," was cumulative and harmless. (Exhibit D)

15. The independent testimony of witness Brian Osborne mitigated the prejudicial effect of the admission of the "mug book," even if such ruling on the part of the trial court was erroneous. See: United States v. Baker, 432 F.3d 1189 1225 (11th Cir. 2005), citing United States v. DeLoach, 654 F.2d 763, 771 (D.C. Cir. 1980), for the proposition that the admission of hearsay testimony was harmless where the jury heard admissible testimony from three other sources to the same effect.

8

16.  Rule 52(a) of the Federal Rules of Criminal Procedure states that any error, defect, irregularity, or variance that does not affect the substantial right must be disregarded.  Trial error, such as the error alleged herein, has been deemed amenable to the harmless error analysis, because "it may . . . be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial]."  Brecht v. Abrahamson, 507 U.S. 619, 629 (1993).  A trial court's evidentiary ruling "will result in reversal only if the resulting error was not harmless."  United States v. Hands, 184 F. 3d 1322, 1320 (11th Cir. 1999).

17.  The standard for determining whether habeas corpus relief must be granted is whether the alleged error "had substantial and injurious effect or influence in determining the jury's verdict."  Kotteakos v. United States, 328 U.S. 750, 776 (1946).  "An error is harmless if it had no substantial influence on the outcome and sufficient evidence uninfected by error supported the verdict."  United State v. Fortenberry, 971 F. 2d 717, 722 (11th Cir. 1992).  The Alabama Court of Criminal Appeals' finding of harmless error is correct, because the evidence admitted was cumulative and did not have a substantial outcome on the verdict.

18.  The finding of the Alabama Court of Criminal Appeals that the admission of the testimony relating to the "mug book" was harmless error is due deference under Title 28, Section 2254(d) of the United States Code.  Title 28,

Section 2254(d) of the United States Code provides the following regarding claims

adjudicated on the merits by the state courts:

> (d) An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.  (Emphasis added.)

19.  Under the aforementioned section, the judgment and factual findings of

the Alabama Court of Criminal Appeals regarding Joyce's claim are due deference

by this Court.  The decision of the state courts on this issue has not resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly

established federal law.  Furthermore, the decision of the state courts was not an

unreasonable determination of the facts.

Accordingly, based on the arguments contained herein, Joyce's petition for

writ of federal habeas corpus is due to be denied.

## CONCLUSION

Based upon the foregoing, Joyce's petition for writ of habeas corpus attacking his conviction of murder is due to be denied.

Respectfully submitted,

Troy King
Attorney General
By:

Jean A. Therkelsen
Assistant Attorney General

# EXHIBITS

Exhibit A - transcript, direct appeal, CR-02-2104.

Exhibit B - Joyce's brief, CR-02-2104.

Exhibit C - State's brief, CR-02-2104.

Exhibit D - Opinion of the Alabama Court of Criminal Appeals affirming
        Joyce's conviction of murder, CR-02-2104.

Exhibit E – Application for rehearing overruled, CR-02-2104.

Exhibit F –Certificate of final judgment, CR-02-2104.

## CERTIFICATE OF SERVICE

I hereby certify that, on March 7, 2006, I served a copy of this document and exhibits with the Clerk of the Court and on the Petitioner, by placing the same in the United States mail, first class, postage prepaid and addressed as follows:

> Darryl Joyce
> AIS # 183316
> William E. Donaldson Correctional Facility
> 100 Warrior Lane
> Bessemer, Alabama, 35023-7299

Jean A. Therkelsen
Assistant Attorney General

ADDRESS OF COUNSEL:
Office of the Attorney General
Criminal Appeals Division
Alabama State House
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7300

105024/90356-001