No. CR-02-2104

In the COURT of CRIMINAL APPEALS
Of ALABAMA

⸻⸻◆⸻⸻

DARRYL JEVON JOYCE,

*Appellant,*

v.

STATE OF ALABAMA,

*Appellee.*

⸻⸻◆⸻⸻

On Appeal From the Circuit Court of
Montgomery County (CC-2002-1417)

BRIEF OF APPELLEE

William H. Pryor Jr.
*Attorney General*

P. David Bjurberg
*Assistant Attorney General*

Jean A. Therkelsen *
*Assistant Attorney General*

Attorneys for Appellee

State of Alabama
Office of the Attorney General
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7300*

January 7, 2004                    *Counsel of Record

EXHIBIT

C

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested.  Rule 32 of the Alabama Rules of Appellate Procedure allows for the request of oral argument in all cases.  According to Rule 32, oral argument is not proper if, among other situations,

> (3) The facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.

Oral argument is not appropriate in the instant case because the facts and legal arguments are clearly set forth in the State's brief and will not be aided by oral presentation.  The State, therefore, does not request oral argument.

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT......................... i

TABLE OF CASES AND AUTHORITIES......................... iii

STATEMENT OF THE CASE.................................... 1

ISSUE PRESENTED FOR REVIEW.............................. 2

STATEMENT OF THE FACTS.................................. 3

STANDARDS OF REVIEW..................................... 6

SUMMARY OF THE ARGUMENT................................. 7

ARGUMENT............................................... 8

    I.  The Trial Court Properly Allowed the State to
    Elicit Testimony from Detective E. E. Howton
    Regarding a Mug Book that Contained Joyce's
    Photograph. ....................................... 8

    II.  The Trial Court Properly Denied Joyce's
    Motion For Judgment of Acquittal. ................... 16

CONCLUSION............................................. 23

CERTIFICATE OF SERVICE................................. 24

## TABLE OF CASES AND AUTHORITIES

**Cases**

Burell v. State, 680 So. 2d 975 (Ala. Crim. App. 1996)... 21

Chapman v. California, 386 U.S. 18 (1967)............... 15

Ex parte Long, 600 So. 2d 982 (Ala. 1992), *overruled on other grounds*, Ex parte Edwards, 816 So. 2d 98 (Ala. 2001) ................................................. 12

Hannah v. State, 518 So. 2d 182 (Ala. Cr. App. 1987)..... 11

Johnson v. State, 555 So. 2d 818 (Ala. Crim. App. 1989) ............................................. 19-20

Lamar v. State, 603 So. 2d 1113 (Ala. Crim. App. 1991)... 21

McFarley v. State, 608 So. 2d 430 (Ala. Crim. App.1992).. 16

McKinney v. State, 654 So. 2d 95 (Ala. Crim. App. 1995).. 11

Newsome v. State, 570 So. 2d 703 (Ala. Crim. App. 1989).. 11

Pate v. State, 601 So. 2d 210 (Ala. Crim. App. 1992)..... 11

Underwood v. State, 646 So. 2d 692 (Ala. Crim. App. 1993) ................................................. 19

United States v. Harrington, 490 F.2d 487 (2nd Cir. 1973) ................................................. 13

White v. State, 546 So. 2d 1014 (Ala. Crim. App. 1989)... 21

Wilson v. State, 777 So. 2d 856 (Ala. Crim. App. 1999)... 10

Zumbado v. State, 615 So. 2d 1223 (Ala. Crim. App. 1993) ................................................. 20

## STATEMENT OF THE CASE

This is an appeal from Darryl Jevon Joyce's conviction of intentional murder in the Montgomery County Circuit Court, Judge Truman Hobbs presiding.

On November 8, 2002, the Montgomery County Grand Jury issued an indictment in case number CC-2002-1417 charging Joyce with the intentional murder of James Friendly in violation of Ala. Code §13A-6-2 (1994). (C. 1, 8) On November 24, 2002, counsel was appointed to represent Joyce at trial. (C. 1) On March 5, 2003, appointed counsel withdrew after the defendant indicated that his family would retain counsel to represent him. (C. 1) On May 8, 2003, counsel was re-appointed to represent Joyce after he did not retain counsel on his own. (C. 2)

The case came to trial on July 21, 2003. (R. 4) On July 22, 2003, the jury returned a verdict finding Joyce guilty of intentional murder, as charged in the indictment. (C. 2, 16) On August 18, 2003, the trial court sentenced Joyce to life without parole under the Alabama Habitual Felony Offender Act. (C. 3, 21-39) Notice of appeal was given on August 18, 2003. (C. 3, 49) On September 17, 2003,

counsel was appointed to represent Joyce on appeal (C. 47),
and this action follows.


## ISSUES PRESENTED FOR REVIEW

1. Did the trial court properly allow the State to
elicit testimony from Detective Howton regarding a mug book
that contained Joyce's photograph?

2. Did the State present sufficient evidence to
support Joyce's conviction of intentional murder?

2

## STATEMENT OF THE FACTS

On the evening of February 1, 2002, the victim, James "Boo" Friendly, Eric "Rabbit" Stewart, and the defendant, Darryl "Poncho" Joyce were among a number of people who attended a party at Nicole Judkins's apartment in the Smiley Court area of Montgomery, Alabama. (R. 78-88, 305) Boo Friendly and Rabbit Stewart went between two of the apartment buildings and snorted some cocaine. (R. 87-90) After they snorted the cocaine, they were approached by Darryl Joyce, who made some disparaging remarks about people from Gibbs Village, the area of town James Friendly was from. (R. 95-96)

Eric Stewart calmed the two men down and got them to shake hands. (R. 98) When Stewart went inside to get a beer, however, Joyce and Friendly started arguing again. (R. 99) Stewart came back and he and Friendly walked a few steps away to snort some more cocaine. (R. 102) Joyce followed them and continued to argue with Friendly about who was the "baddest" gangbanger. (R. 102-104, 207) Joyce pulled a gun out of the back of his pants and shot Friendly in the leg. (R. 108) Friendly backed away and Joyce shot him again. (R. 108) Friendly fell on the ground and said,

3

"Hold up, man," but Joyce shot him again. (R. 109) After Joyce shot Friendly three times, he ran away. (R. 109, 295, and 298) James Friendly died a short while later. The cause of death was later determined to be multiple gunshot wounds. (R. 293, 305) After the police arrived at the scene, Eric Stewart was taken to headquarters, where he gave a statement that he saw Darryl Joyce shoot James Friendly. (R. 157)

Johnny and Brian Osborne attended the party that night in a rented red and black Jeep Cherokee automobile. (R. 161, 199) When they arrived, they noticed their cousin, Eric Stewart, huddled between two buildings with Darryl Joyce and James Friendly. Johnny Osborne recognized James Friendly, because he had grown up with him. (R. 170, 171) Joyce and Friendly were arguing loudly. (R. 163, 206)

Brian Osborne left the party but returned a short while later. When Brian came back, the Friendly and Joyce were still arguing. Johnny Osborne told his brother that he wanted to leave because the fight was going to escalate. (R. 167-168) Johnny got in the driver's seat. As Brian Osborne walked around the Jeep to get in the passenger side shots were fired that shattered the windows in the truck.

4

(R. 169) Brian Osborne saw Darryl Joyce shoot James Friendly in the leg.  (R. 208) Joyce then fired some shots toward their truck.  (R. 208) Darryl Joyce shot James Friendly several more times while Brian Osborne was watching.  (R. 211) After the shots were fired, Johnny Osborne jumped out of the truck and saw James Friendly lying on the ground.  (R. 171) After he shot James Friendly Darryl Joyce ran away.  (R. 220)

Detective E. E. Howton of the Montgomery Police Department investigated the murder of James Friendly.  (R. 231-235) Howton discovered that there were two Darryls at the party that night, Darryl Joyce and a man named Darryl Foggy.  (R. 237) Foggy had a gun that night but it was not the murder weapon and he was later cleared as a suspect.  (R. 114-116, 242, and 284) Three witnesses at the party that night identified Darryl Joyce as the shooter.  (R. 242) On February 11, 2002, Darryl Joyce was arrested in California and brought back to Alabama for trial.  (R. 243)

Shell casings that were recovered at the murder scene that night were sent to the Alabama Department of Forensic Sciences for testing.  (R. 284) All three shell casings were fired from the same gun.  None of them, however, were

5

fired from the weapon that belonged to Darryl Foggy.  (R. 284, 289)

## STANDARDS OF REVIEW

1.  Generally, where the trial court immediately instructs the jury not to consider a fact, that instruction, in effect, removes or excludes that matter from the jury's consideration, and the prejudicial effect of the statement is deemed to be cured by such instruction. Wilson v. State, 777 So. 2d 856, 919 (Ala. Crim. App. 1999).  The trial judge's determination regarding the prejudicial effects of an improper remark should be accorded great deference.  Hannah v. State, 518 So.2d 182, 185 (Ala. Cr. App. 1987).

2.  When reviewing the sufficiency of the evidence to support a jury's verdict, this Court must view the evidence in a light most favorable to the State.  Underwood v. State, 646 So. 2d 692, 695 (Ala. Crim. App. 1993).  Where a prima facie case is made and presents a question to the fact-finder, "the verdicts rendered thereon are conclusive on appeal."  Johnson v. State, 555 So. 2d 818, 820 (Ala. Crim. App. 1989); Zumbado v. State, 615 So. 2d 1223, 1240

(Ala. Crim. App. 1993).  The appellate court will not overturn verdicts based on sufficient evidence "unless the preponderance of the evidence against the verdict is so decided as to clearly convince this court that the verdict was wrong and unjust." McKinney v. State, 654 So. 2d 95, 99-100 (Ala. Crim. App. 1995).

## SUMMARY OF THE ARGUMENT

1. Generally, where the trial court immediately instructs the jury not to consider a fact, that instruction, in effect, removes or excludes that matter from the jury's consideration, and the prejudicial effect of the statement is deemed to be cured by such instruction." Wilson v. State, 777 So. 2d 856, 919 (Ala. Crim. App. 1999).  The trial judge's determination regarding the prejudicial effects of an improper remark should be accorded great deference. Hannah v. State, 518 So.2d 182, 185 (Ala. Cr. App. 1987).  Defense counsel did not ask the trial court for further curative instructions and, therefore, this issue is not preserved for appellate review. Newsome v. State, 570 So. 2d 703, 717 (Ala. Crim. App. 1989).  The trial court did not err by allowing the

State to introduce testimony regarding the mug book at

issue because the identity of the shooter was at issue

throughout the trial.  The State met all three prongs

required under United States v. Harrington, 490 F. 2d 487,

494 (2nd Cir. 1973).  Finally, defense counsel first placed

the issue of the photographic line-up before the jury and

failed to object to testimony regarding the mug book that

was elicited by the State during direct examination of Eric

Stewart.  Even if the admission of the testimony regarding

the mug book was error, it was, at most, harmless error.

See: Chapman v. California, 386 U. S. 18 (1967).

        2.  The evidence was sufficient to support Joyce's

conviction of intentional murder.


                            **ARGUMENT**

I.   **The Trial Court Properly Allowed the State to Elicit
     Testimony from Detective E. E. Howton Regarding a Mug
     Book that Contained Joyce's Photograph.**

     In issue one of his brief on direct appeal, Joyce

argues that the trial court erred in allowing the State to

elicit testimony from Detective E. E. Howton regarding a

mug book that contained a photograph of Joyce.  Joyce

argues that such testimony was highly prejudicial, was used

                                                            8

solely for the purpose of attacking his character, and that

the trial court's curative instruction did not "cure" the

error.  During the State's direct examination of Detective

Howton, the following occurred:

> Q.  And when was the next time any law enforcement
>     had contact with this defendant?
>
> A.  When he was arrested out in Los Angeles.  That
>     was on the 11th.
>
> Q.  The 11th, ten days later?
>
> A.  Yes.
>
> Q.  He was all the way in Los Angeles, California?
>
> A.  Yes.
>
> Q.  Now, Detective, I want to show you what I have
>     marked for identification purposes only as
>     State's 28. Explain to the jurors what State's
>     28 is.
>
> A.  This is a mug book that we have.
>
> Q.  What does that mean?
>
> A.  Well, it has got - - it contains photographs
>     of - -
>
> THE COURT:  Can you speak up, Detective.  I don't
> think everyone can hear you.
>
> A.  This is a mug book.  It has a - - or has
> photographs of several individuals which have been
> arrested over a period of time, and they are
> collected in this book.
>
> MR. HARTLEY (Defense Counsel):  Judge, I object
> and move for a mistrial.  The evidence - -

whatever the history of all these people in this
book should not be introduced in this trial,
Judge.

(An off the record discussion was held outside the
presence and hearing of the jury and the court
reporter.)

    THE COURT:  You have your objection.  Ladies
and gentlemen of the jury, the fact that the
police department has a photograph of Mr. Joyce is
not to be considered by you any implication that
he is guilty or innocent in this case.  It is not
evidence of guilt, the fact that they had a
photograph of Mr. Joyce.

        They have got lots of photographs and
that's not to be considered by you.  Does
everybody understand that?  Does anybody have a
problem with treating that as not being an
indication of guilt?  Okay.

(R. 245-246)

    The trial court's curative instruction to the jury

adequately cured any prejudice to the defendant.

Generally, the effect of curative instructions on

prejudicial statements made before the jury is that "where

the trial court immediately instructs the jury not to

consider a fact, that instruction, in effect, removes or

excludes that matter from the jury's consideration, and the

prejudicial effect of the statement is deemed to be cured

by such instruction."  Wilson v. State, 777 So. 2d 856, 919

(Ala. Crim. App. 1999).  The trial judge is in the best

position to determine whether the prejudicial effects of an improper remark can be eradicated by instructions to the jury, and his determination should be accorded great deference. Hannah v. State, 518 So.2d 182, 185 (Ala. Cr. App. 1987). Defense counsel in this case did not ask for further curative instructions or object that the instruction was too general in nature, as appellate counsel now argues on appeal. (Joyce's brief, page 22)

Therefore, Joyce's claim that the trial court's curative instruction was insufficient is not preserved for appellate review. Review on appeal is restricted to questions and issues properly and timely raised at trial. Newsome v. State, 570 So. 2d 703, 717 (Ala. Crim. App. 1989). "An issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented." Pate v. State, 601 So. 2d 210, 213 (Ala. Crim. App. 1992). "To preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof." McKinney v. State, 654 So. 2d 95, 99 (Ala. Crim. App. 1995). Defense counsel made no objection at trial to the curative instructions

11

given by the trial court, nor did he request further
instructions.  Therefore, this issue is not preserved.

In the alternative, the trial court did not err by
allowing the State to introduce testimony regarding the mug
book because the identity of the shooter was at issue
throughout the trial.  After stating what a mug book was,
Detective Howton then verified that Darryl Joyce's picture
was in the mug book and explained that the mug book was
shown to some of the witnesses to see if they could
identify the shooter.  (R. 246-247) In particular, the mug
book was shown to Eric Stewart, who identified Darryl Joyce
as the man who shot James Friendly.  (R. 247)

In Ex parte Long, 600 So. 2d 982 (Ala. 1992), *overruled
on other grounds*, Ex parte Edwards, 816 So. 2d 98 (Ala.
2001), the Alabama Supreme Court stated that mug shots are
generally inadmissible in a criminal trial because the jury
may infer from them that the defendant has a criminal
history.  Under certain circumstances, however, the Court
held that admitting a mug shot into evidence does not
constitute reversible error.

> We find no cases from this Court directly on the
> point of the admissibility of mug shots, but the
> Court of Criminal Appeals has, in numerous cases,
> relied on the three prerequisites established in

12

> United States v. Harrington, 490 F. 2d 487 (2d
> Cir. 1973), for a ruling that the introduction of
> a "mug shot" photograph does not result in
> reversible error.  See, e.g., Williams v. State,
> 546 So. 2d 705 (Ala. Crim. App. 1989); Jones v.
> State, 451 So. 2d 389 (Ala. Crim. App. 1984);
> Gross v. State, supra; Williamson v. State, 384
> So. 2d 1224 (Ala. Crim. App. 1980); Holsclaw v.
> State, 364 So. 2d 378 (Ala. Crim. App. 1978); but
> see Brown v. State, 229 Ala. 58, 155 So. 358
> (1934) (fact that defendant was in jail when
> photograph was taken did not present reversible
> error as to admission of the photograph).

Ex parte Long, 600 So. 2d at 989.

The three requirements set out in United States v. Harrington, 490 F. 2d 487 (2nd Cir. 1973), are: (1) The Government must have a demonstrable need to introduce the photographs; (2) the photographs themselves, if shown to the jury, must not imply that the defendant has a prior criminal record; and, (3) the manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs.  United States v. Harrington, 490 F. 2d at 494.  The Court went on to state that these three inquiries are appropriate criteria to consider when determining the admissibility of a mug shot. *The Court noted, however, that the failure to meet one or more of these criteria would not necessarily result in reversible error.*

In this case, the State met all three of the prongs of the Harrington test. The identity of the shooter was at issue throughout the case, in fact was placed in issue by defense counsel who argued in his opening statement that Darryl Foggy, not Darryl Joyce, was the shooter. (R. 73-76) Furthermore, in his opening remarks to the jury, defense counsel claimed that no one had correctly identified Darryl Joyce as the shooter from a photographic line-up or specifically picked him out as being the man who shot and killed James Friendly. (R. 76) Defense counsel, therefore, first placed the issue of the photographic line-up before the jury.

Because the identity of the shooter was called into question throughout the trial, the State had a demonstrable need to introduce the mug book. The mug book itself, however, did not imply that Joyce had a prior criminal record and the manner in which the mug book was introduced did not draw attention to its source or implications. Although the photograph was a mug-shot photograph, which, the Alabama Supreme Court has noted, generally "produces a "natural, perhaps automatic" inference of prior encounters with the police," Ex parte Long, 600 So. 2d at 991, there

14

was nothing from which the jury could have inferred that
Joyce had a prior criminal record.

Furthermore, in addition to defense counsel's own
reference to the photographic line-up in his opening
statement to the jury, during the State's examination of
witness Eric Stewart, who testified at trial before
Detective Howton, Stewart identified Darryl Joyce as the
shooter from the mug book in question.  (R. 141-143) Using
a laser pointer, Stewart pointed to Joyce's picture in the
mug book and stated that Joyce was the shooter.  (R. 142-
143) This testimony was allowed before the jury with no
objection from defense counsel to the State's reference to
the mug book, to the jury's viewing the defendant's picture
in the mug book, or to Stewart's identification of Joyce
from the mug book. Detective Howton's later reference to
the mug book was, therefore, cumulative to Stewart's
earlier reference to it which was placed before the jury
without objection.

Assuming, however, that the admission of the mug shot
was error, it was, at most, harmless error. See: Chapman
v. California, 386 U. S. 18 (1967). "Testimony that may be
inadmissible may be rendered harmless by prior or

15

subsequent lawful testimony to the same effect or from which the same facts can be inferred." McFarley v. State, 608 So. 2d 430, 433 (Ala. Crim. App. 1992). In the present case, the testimony regarding the mug book was harmless because it was cumulative to the earlier testimony of Eric Stewart regarding the mug book that was allowed before the jury without objection on the part of defense counsel.

Accordingly, the trial court is due to be affirmed.

## II.  The Trial Court Properly Denied Joyce's Motion For Judgment of Acquittal.

On appeal, Joyce argues that the evidence was insufficient to support his conviction of intentional murder. Specifically, Joyce argues that there was conflicting evidence that Darryl Foggy was the shooter.

At trial, the State presented evidence that on the evening of February 1, 2002, the victim, James "Boo" Friendly, Eric "Rabbit" Stewart, and the defendant, Darryl "Poncho" Joyce were among a number of people who attended a party at Nicole Judkins's apartment in the Smiley Court area of Montgomery, Alabama.  (R. 78-88, 305) Boo Friendly and Rabbit Stewart went between two of the apartment buildings to snort some cocaine.  (R. 87-90)  After they

16

snorted the cocaine, they were approached by Darryl Joyce, who made some disparaging remarks about people from Gibbs Village, the area of town James Friendly was from. (R. 95-96)

Eric Stewart calmed the two men down and got them to shake hands. (R. 98) When Stewart went inside to get a beer, however, Joyce and Friendly started arguing again. (R. 99) Stewart came back and he and Friendly walked a few steps away to snort some more cocaine. (R. 102) Joyce followed them and continued to argue with Friendly about who was the "baddest" gangbanger. (R. 102-104, 207) Joyce pulled a gun out of the back of his pants and shot Friendly in the leg. (R. 108) Friendly backed away and Joyce shot him again. (R. 108) Friendly fell on the ground and said, "Hold up, man," but Joyce shot him again. (R. 109) After Joyce shot Friendly three times, he ran away. (R. 109, 295, and 298) James Friendly died a short while later. The cause of death was later determined to be multiple gunshot wounds. (R. 293, 305) After the police arrived at the scene, Eric Stewart was taken to headquarters, where he gave a statement that Darryl Joyce shot James Friendly. (R. 157)

Johnny and Brian Osborne attended the party that night in a rented red and black Jeep Cherokee automobile. (R. 161, 199) When they arrived, they noticed Joyce, Stewart, and Friendly huddled between two buildings arguing loudly. (R. 163, 206) Johnny Osborne recognized Eric Stewart because he was his cousin. He also recognized James Friendly, because he had grown up with him. (R. 170, 171) Brian Osborne left the party but returned a short while later. When Brian came back, the Friendly and Joyce were still arguing. Johnny Osborne told his brother that he wanted to leave because the fight was going to escalate. (R. 167-168) Johnny got in the driver's seat. As Brian Osborne walked around the Jeep to get in the passenger side shots were fired that shattered the windows in the truck. (R. 169) Brian Osborne saw Darryl Joyce shoot James Friendly in the leg. (R. 208) Joyce then fired some shots toward their truck. (R. 208) Darryl Joyce shot James Friendly several more times while Brian Osborne was watching. (R. 211) After the shots were fired, Johnny Osborne jumped out of the truck and saw James Friendly lying on the ground. (R. 171) After shooting Friendly, Darryl Joyce ran away. (R. 220)

18

Detective E. E. Howton of the Montgomery Police Department investigated the murder of James Friendly. (R. 231-235) Howton discovered that there were two Darryls at the party that night, Darryl Joyce and Darryl Foggy. (R. 237) Foggy had a gun that night but it was not the murder weapon and he was later cleared as a suspect. (R. 114-116, 242, and 284) Three witnesses at the party that night identified Darryl Joyce, not Darryl Foggy, as the shooter. (R. 242) On February 11, 2002, Darryl Joyce was arrested in California and brought back to Alabama for trial. (R. 243)

Shell casings that were recovered at the murder scene that night were sent to the Alabama Department of Forensic Sciences for testing. (R. 284) All three shell casings were fired from the same gun, but not from the weapon belonging to Darryl Foggy. (R. 284, 289)

When reviewing the sufficiency of the evidence to support a jury's verdict, this Court must view the evidence in a light most favorable to the State. Underwood v. State, 646 So. 2d 692, 695 (Ala. Crim. App. 1993). Where a prima facie case is made and presents a question to the fact-finder, "the verdicts rendered thereon are conclusive on appeal." Johnson v. State, 555 So. 2d 818, 820 (Ala.

Crim. App. 1989); Zumbado v. State, 615 So. 2d 1223, 1240
(Ala. Crim. App. 1993). The appellate court will not
overturn verdicts based on sufficient evidence "unless the
preponderance of the evidence against the verdict is so
decided as to clearly convince this court that the verdict
was wrong and unjust." McKinney v. State, 654 So. 2d 95,
99-100 (Ala. Crim. App. 1995). Any conflict between the
State's evidence and that offered by Joyce goes to the
weight, and not to the sufficiency, of the evidence.

> This court must revise and overturn the verdicts
> of juries where, in our opinion, after making all
> proper allowances and indulging all reasonable
> intendments in favor of the court below, we reach
> the conclusion that the finding and judgment are
> wrong. The role of appellate courts is not to say
> what the facts are. Our role . . . is to judge
> whether the evidence is legally sufficient to
> allow submission of an issue for decision to the
> jury. An appellate court may interfere with the
> jury's verdict only where it reaches a conclusion
> that the finding and judgment are wrong. The rule
> is clearly established in the state that a verdict
> of conviction should not be set aside on the
> ground of the insufficiency of the evidence to
> sustain the verdict, unless, after allowing all
> reasonable presumptions of its correctness, the
> preponderance of the evidence against the verdict
> is so decided as to clearly convince the court
> that it was wrong and unjust. Even though an
> appellate court should marvel that a jury would
> convict upon such flimsy proof, it is not
> permitted to pass upon the weight or sufficiency
> of the evidence, where it may yield any rational
> inference of guilt. A verdict on conflicting
> evidence is conclusive on appeal. Where there is

ample evidence offered by the State to support a
verdict, it should not be overturned even though
the evidence offered by the defendant is in sharp
conflict therewith and presents a substantial
defense.

White v. State, 546 So. 2d 1014, 1017 (Ala. Crim. App.

1989)(citations omitted). See: Judge Bowen's dissenting

opinion in Lamar v. State, 603 So. 2d 1113, 1117 (Ala.

Crim. App. 1991).

In Burell v. State, 680 So. 2d 975, 977 (Ala. Crim.

App. 1996), the Alabama Court of Criminal Appeals stated

that, to sustain a conviction, a reviewing court must

accept as true all evidence introduced by the State, accord

the State all legitimate inferences therefrom, and consider

all evidence in a light most favorable to the prosecution.

Furthermore, the Court stated, a judgment of conviction

will not be set aside on the ground of insufficiency of the

evidence unless, allowing all reasonable presumptions for

its correctness, the preponderance of the evidence against

the judgment is so decided as to clearly convince the

reviewing court that it was wrong and unjust. Burell, at

977.

Questions concerning the credibility of witnesses and

the weight or probative force of evidence are to be

21

determined by the finder of facts.  It is not an
appropriate exercise of appellate review to invade the
province of the jury (or judge in a non-jury trial), and
reweigh the evidence presented at trial.  Johnson, 555 So.
2d at 820.  There was sufficient evidence to support the
jury's finding that Joyce was guilty of intentional murder.

Accordingly, for the aforementioned reasons, the
trial court properly denied Joyce's motion for judgment of
acquittal and should be affirmed.

22

## CONCLUSION

For the above-stated reasons, this Court should affirm Joyce's conviction of intentional murder and his sentence of life without parole under the Alabama Habitual Felony Offender Act.

Respectfully submitted,

William H. Pryor Jr.
*Attorney General*

P. David Bjurberg
*Assistant Attorney General*
By:

Jean A. Therkelsen
*Senior Assistant Attorney General*

23

## CERTIFICATE OF SERVICE

I hereby certify that, on January 7, 2004, a copy of the foregoing was served on the attorney for the appellant by placing the same in the United States mail, first class postage prepaid, addressed as follows:

> Honorable Aimee C. Smith
> 640 S. McDonough Street
> 2nd Floor
> Montgomery, Alabama 36104

Jean A. Therkelsen
Assistant Attorney General

Address of Counsel:
Office of the Attorney General
Criminal Appeals Division
Alabama State House
11 South Union Street
Montgomery, AL 36130-0152
(334) 242-7300
132529/58199-001

24