Notice: This unpublished memorandum should not be cited as precedent. See Rule 54, Ala.R.App.P. Rule 54(d), states, in part, that this memorandum "shall have no precedential value and shall not be cited in arguments or briefs and shall not be used by any court within this state, except for the purpose of establishing the application of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar."

# Court of Criminal Appeals
State of Alabama
Judicial Building, 300 Dexter Avenue
P. O. Box 301555
Montgomery, AL 36130-1555



RELEASED
AUG 1 3 2004
CLERK
ALA COURT CRIMINAL APPEALS

H.W."BUCKY" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges

Lane W. Mann
Clerk
Wanda K. Ivey
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

MEMORANDUM

CR-02-2104           Montgomery Circuit Court CC-2002-1417

Darryl Jevon Joyce, alias v. State of Alabama

COBB, Judge.

Darryl Jevon Joyce was indicted for the murder of James Friendly. § 13A-6-2, Ala. Code 1975. Following a jury trial, he was convicted of murder and he was sentenced, as a habitual felony offender, to life imprisonment without parole. § 13A-5-9, Ala. Code 1975. We affirm.

The evidence presented at trial tended to show that, on the evening of February 1, 2002, Joyce, James Friendly, and several other people including Darryl Foggy attended a party at an apartment in a residential area known as Smiley Court. Eric Stewart testified that he and Friendly walked between two apartment buildings so that they could ingest cocaine. Joyce,

1

EXHIBIT D

who was known as "Poncho," walked up to them. Stewart and Friendly talked about their time in jail and soon thereafter, Joyce and Friendly began to argue about who could "hold their own on the street." (R. 97.) Stewart stood between Joyce and Friendly in an attempt to diffuse the situation. Joyce and Friendly shook hands and Stewart went into the apartment to get a beer.

Stewart said that, when he came out of the apartment again, Joyce and Friendly were arguing. Friendly and Stewart walked to the side of the building again to ingest cocaine. Stewart testified that Friendly said, "Fuck this here," as he walked away from Joyce, but that Joyce thought Friendly said, "Fuck you." Joyce said, "Fuck me," and reached for the gun he was carrying. (R. 101, 105.) Joyce fired several shots, three of them hit Friendly and some hit a vehicle nearby. Stewart said that Joyce then ran from the scene. Stewart testified that he knew Darryl Foggy, and that Foggy was not at the scene when Joyce shot Friendly. Stewart acknowledged that, after the shooting, Foggy hid a handgun beneath a rug in the apartment across the street from where the shooting occurred. Stewart told the police about the weapon.

On cross-examination, defense counsel established that Stewart's statements to the police and his testimony at trial contained inconsistencies regarding the shots Joyce fired and whether they were directed at the victim first or only after he fired at the ground and at the vehicle. On redirect examination, Stewart identified State's Exhibit 28, a book of photographs, and testified that the police had showed him the book and asked him to identify Joyce and that he had done so.

Johnny Osborne testified that he had attended the party on the night Friendly was shot. He heard Joyce and Friendly argue "about who was the baddest gang banger." (R. 167.) He was preparing to leave because the argument was escalating, and as he started to drive away, he heard gunshots and the windows in his truck shattered. He did not see who fired the shots, but he testified that Darryl Foggy was inside the apartment when the shooting occurred. Johnny's brother, Brian, was also at the party. He testified that he knew Darryl Joyce because Eric Stewart had introduced them. Brian testified that Stewart had introduced Joyce as "his home boy out of prison, from prison." (R. 206.) Brian testified that

2

Joyce and Friendly were arguing about "gang stuff," and he saw Joyce shoot Friendly in the leg. He said that Joyce then shot the truck he and his brother were in, and that Joyce then fired two or three more shots at Friendly. Brian said that he saw Friendly fall after being shot and he saw Joyce run away.

Detective E.E. Howton testified that Joyce and Foggy were suspects in the shooting. Howton interviewed several witnesses, including Foggy. He said that Eric Stewart told him that Foggy was not involved in the shooting, and Stewart told him the location of Foggy's gun. Howton testified that Joyce was arrested in California on February 11, 2002, following a traffic stop. Joyce told California authorities that his name was Willie Faulk.

The medical examiner who conducted the autopsy testified that Friendly died of multiple gunshot wounds. Three shell casings were recovered from the scene and one bullet was recovered from the victim's body. A forensic scientist testified that the three shell casings were fired from the same gun, and that they were not fired from the gun Darryl Foggy hid after the shooting. The forensic scientist further testified that it did not appear that the bullet recovered from the victim's body was fired from Foggy's gun.

I.

Joyce first argues that the trial court erred when it allowed testimony regarding a "mug book" because, he argues, the "testimony was highly prejudicial to the Defendant and was used solely for the purpose of attacking the Defendant's character and reputation." (Appellant's brief at p. 20.) He argues, further, that the "mug book" was used "merely to attack the Defendant's character and reputation during their case in chief for the sole purpose of inducing belief in his guilt or showing his tendency to commit the crime of murder." (Appellant's brief at p. 22.)

The prosecutor asked Detective Howton to identify State's Exhibit 28.[1] Howton said, "This is a mug book. It has a -- or has photographs of several individuals which have been

---

[1] State's Exhibit 28 was presented for identification purposes only and was not admitted into evidence.

3

arrested over a period of time, and they are collected in this book." Defense counsel objected and moved for a mistrial. Counsel argued, "The evidence -- whatever the history of all these people in this book should not be introduced in this trial, Judge." (R. 245.) After an off-the-record discussion was held, the trial court stated:

> "You have your objection. Ladies and gentlemen of the jury, the fact that the police department has a photograph of Mr. Joyce is not to be considered by you any implication that he is guilty or innocent in this case. It is not evidence of guilt, the fact that they had a photograph of Mr. Joyce.
>
> "They have got lots of photographs and that's not to be considered by you. Does everybody understand that? Does anybody have a problem with treating that as not being an indication of his guilt? Okay."

(R. 246.)

Initially, we question whether Joyce has preserved for our review the specific objections now raised. When Joyce objected at trial, he stated only that the prior history of those who were photographed was not admissible. However, following the off-the-record discussion, the trial court instructed the jury that the fact that the police had a photograph of Joyce was not to be used to establish his guilt or innocence. From the record before us, we cannot determine that Joyce argued to the trial court that the testimony about the "mug book" attacked his character or reputation. Because the appellant did not present that specific claim to the trial court, it is not properly before this Court. Clem v. State, 864 So. 2d 1111, 1113-4 (Ala. Crim. App. 2002. We can discern, based on the record as a whole, that Joyce argued that the testimony was suggestive of a prior bad act and was, therefore, impermissible, and that the trial court understood the basis of Joyce's objection and instructed the jury in response to that objection.

Joyce argues on appeal that testimony about the "mug book" was inadmissible because the jury might have inferred that he had a prior criminal history and he cites Ex parte

4

Long, 600 So. 2d 982 (Ala. 1992), overruled on other grounds, 816 So. 2d 98 (Ala. 2001). Even if Detective Howton's testimony about the "mug book" was error, we find that any error was harmless. First, the jury had already heard testimony that Joyce had been in prison. Brian Osborne had earlier testified that Eric Stewart had introduced Joyce as "his home boy out of prison, from prison." (R. 206.) Joyce did not object to that testimony. Thus, any implication of a prior criminal history resulting from reference to a "mug book" would have been cumulative and, therefore, harmless. Ex parte Harris, [Ms. 1020899, Mar. 5, 2004] ___ So. 2d ___ (Ala. 2004). Second, the trial court issued a very thorough curative instruction to the jury, informing the jurors that the existence of the photograph was not to be considered as evidence of guilt. We believe that any possible error was rendered harmless by the actions of the trial court. E.g., Smith v. State, 797 So. 2d 503, 535 (Ala. Crim. App. 2000).

Joyce is not entitled to any relief on this claim.

## II.

Joyce next argues that the trial court erred to reversal when it denied his motion for judgment of acquittal. He argues, as he did at trial, that the State did not present a prima facie case of murder and that the witnesses who implicated him were not credible.

> "'The trial court's denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty. Thomas v. State, 363 So. 2d 1020 (Ala.Cr.App. 1978). In applying this standard, this court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So. 2d 199 (Ala.Cr.App. 1983). When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for

5

>    judgment of acquittal does not constitute
>    error. <u>McConnell v. State</u>, 429 So.2d 662
>    (Ala.Cr.App.1983).'
> "<u>Ward v. State</u>, 610 So. 2d 1190, 1191 (Ala. Crim.
> App. 1992)."

<u>Gavin v. State</u>, [Ms. CR-99-1127, Sept. 26, 2003] ___ So. 2d ___, ___ (Ala. Crim. App. 2003).

We find no error in the trial court's denial of Joyce's motion for judgment of acquittal. Although the testimony of some of the State's witnesses contained inconsistencies, matters of weight and credibility of evidence were to be determined by the jury, once a prima facie case was established. Viewing the evidence in the light most favorable to the State, we find that there was ample evidence, including eyewitness testimony, from which the jury could have by fair inference found Joyce guilty of the murder of James Friendly. Eric Stewart testified about the argument between Joyce and Friendly and that he saw Joyce shoot Friendly three times. Brian Osborne testified that he observed Friendly and Joyce argue about "gang stuff," and that he saw Joyce shoot Friendly. Stewart, Osborne, and Osborne's brother, Johnny, testified that Darryl Foggy was inside the apartment when Friendly was shot. Finally, the State presented testimony that Joyce fled the scene and was arrested days later in another state. The evidence before the jury was more than sufficient to sustain a conviction, and the trial court correctly denied the motion for a judgment of acquittal. Joyce is not entitled to any relief on this claim.

For the foregoing reasons, we find affirm the judgment of the Circuit Court of Montgomery County.

AFFIRMED.

McMillan, P.J., and Baschab, and Shaw, and Wise concur.